ADAMS v. GALVESTON, H. & S. A. RY. CO.

(Court of Civil Appeals of Texas. Galveston. Feb. 20, 1914. Rehearing Denied March 12, 1914.)

1. NEGLIGENCE (§ 136*)—PROVINCE OF COURT AND JURY—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is for the jury, unless the act done is in violation of law, or the facts admit of but one inference.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. RAILROADS (§ 350*)—CROSSING ACCIDENTS—ACTIONS—JURY QUESTION.

In an action for injuries in a collision between an automobile and a train at a highway crossing, evidence held sufficient to take the question of contributory negligence to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. TRIAL (§ 296*)—INSTRUCTIONS—CURING ERROR.

The fact that the court left it to the jury whether contributory negligence in driving onto a railroad track in plaintiff's automobile was the proximate cause of his injury did not cure the error in charging that plaintiff was negligent, when that was a jury question, where any negli-

gence by plaintiff was necessarily a proximate cause; nor was such error cured by submitting the question of plaintiff's negligence in stopping upon the track after going there.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

4. RAILROADS (§ 312*)—INJURIES ON TRACK—LOOKOUT.

The court instructed, in an action for injuries by the collision of plaintiff's automobile with a train at a highway crossing, that if those in charge of the engine failed to exercise ordinary care to keep a lookout ahead to prevent injury to persons crossing the track at the crossing, and such negligence, if any, was the proximate cause of plaintiff's injury, and he was not guilty of negligence contributing to his injury, the jury should find for plaintiff. Held, that the instruction was a proper statement of the law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 988–1001, 1003–1005; Dec. Dig. § 312.*]

Appeal from District Court, Colorado County; M. Kennon, Judge.

Action by Ad Adams against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Ring, Carothers & Brown, of Houston, and A. J. Wirtz, of Eagle Lake, for appellant. Townsend, Quin & Townsend, of Columbus, and Baker, Botts, Parker & Garwood and John T. Garrison, all of Houston, for appellee.

McMEANS, J. Ad Adams brought this suit against the Galveston, Harrisburg & San Antonio Railway Company to recover damages sustained by him in a collision on a public road crossing between one of defendant's passenger trains and an automobile in which he was riding. Defendant answered by general denial, and specially pleaded other defenses, among which was the contributory negligence of plaintiff. A trial in the court below, before a jury, resulted in a verdict and judgment for the defendant, and plaintiff has appealed.

Upon the issue of contributory negligence of plaintiff in going upon the railroad track at the time of the collision, the court charged the jury as follows: "It is shown by the uncontroverted evidence, and by the plaintiff himself, that he was familiar with the crossing in question, that he knew about the schedule time of the passenger train that struck his car, that he could have seen the approach of the train for a long distance before it reached the crossing by looking, and that he did not look to see whether a train was approaching before he drove upon the crossing, because he did not hear the whistle blow or the bell ring for the crossing. Then, as to his driving upon the crossing under such circumstances, he was guilty of contributory negligence as a matter of law, and if this negligence was the proximate cause of the accident, you will find for the defendant on this issue."

The giving of this charge is assailed by appellant's first assignment of error, his contention being that the charge was not warranted by the facts. The track of the Galveston, Harrisburg & San Antonio Railway Company runs east from Eagle Lake to Lissie, and the public road runs parallel with the track and at a distance of about 50 or 60 feet south of the track. In going home from Eagle Lake, Adams traveled about 4 miles east on the Eagle Lake-Lissie road, and then turned into another public road running north across the track past his home on the north side of the track. At about 4 p. m. on August 10, 1911, appellant was driving his automobile, and as he approached this crossing he overtook and passed Follette and his team at the whistling point. Follette's team became frightened at the automobile. Just as appellant turned to leave the Lissie road and go across the crossing, he noticed Mr. Schrafft's team approaching the crossing from the opposite side, and saw that the mules were becoming frightened. Schrafft's team was "scarey," and Schrafft and his boy were in the wagon. Without stopping his engine, appellant shifted the clutch out of high speed and put on his brakes, and the car rolled gradually up to the track, coming to a standstill on top of the rails. It was appellant's intention to back out the same way he came in and let Schrafft's team through the crossing; but just as the car stopped on the track appellant heard the whistle of the east-bound Galveston, Harrisburg & San Antonio passenger train, then, according to his testimony, 50 or 60 feet away. He attempted to get out of the car; but the engine struck the car, completely demolishing it, and just as appellant jumped the side of the engine struck him, injuring his hip and ankle.

Adams, Follette, and Schrafft all testified that the train failed to whistle or ring for the crossing. The appellant, Adams, testified that he listened for this train, and if it had whistled for the crossing, as the law required, he would not have gone onto the crossing, and would not have been injured. Appellant admitted that he did not look up and down the track as he turned to go onto the crossing, but he testified as follows: "I didn't turn my head, I was centered on that team. If the train had whistled at the board, I wouldn't have gone onto the crossing at all. I supposed the whistling board was there for the purpose of warning me. I was not depending on it, and that is not the reason I didn't look—because I didn't hear it. If I hadn't been bothered with that team, perhaps I might have looked; passing one team that scared and meeting the other, it drawed a man's attention." There were two other men in the car, and appellant did not know whether these men looked or not. Appellant testified that the train gave no

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

warning until his car stopped on the track, and in this he was corroborated by Schrafft and Follette.

Appellant further testified as follows: "When I turned into the crossing I was running I suppose at the rate of about 8 or 10 miles an hour. I did not keep up that speed, for as soon as I made the turn I began to slow up. I don't know how fast I was running from the corner to the crossing. Going at the rate of speed I was going, I could have stopped the car before I reached the railroad track. If I had looked up the track and seen the train coming, I could have either stopped the car or went on across. If Mr. Schrafft's team had not been on the other side of the crossing, I would have cleared the crossing. It was just the other side of the right of way a little ways." He further testified:

"I ran along on the south side of the Galveston, Harrisburg & San Antonio track, and parallel to it. The road is about 50 or 60 feet from the track. I was going east. I know where the whistling board is on the Galveston, Harrisburg & San Antonio track before reaching the crossing. I should judge that it is somewhere about a quarter of a mile west of the crossing where the accident occurred. About that place I passed some one in a wagon. I passed Mr. Follette in the wagon. He was going toward Lissie, in the same direction that I was going. I passed him on the left-hand side. I went to the north of him. His team got frightened, and jumped in the road, and tried to run. I did not stop my car, but passed on by him, and do not know whether his team ran after that or not. After I passed him and got out of his way, I went on. I did not look back to see what his team was doing. There was a whistling post right near there. I do not know whether the railroad company's trains always whistle at the whistling post. In going down, after I passed the whistling board, and just as I turned in to go upon the track, I didn't hear any whistle. I knew that the train ought to whistle at the board, and I was depending on the train whistling at that board to warn me of its approach. I knew it ought to whistle there."

"Q. You knew they ought to whistle there, and because you didn't hear any, you were then depending on the train to give that alarm, and that is the reason you went upon the track, because you didn't hear them give that alarm? A. I suppose so. Q. So you were listening for the train to give you warning? A. I naturally would. Q. So, then, you were depending, you were listening for the train to whistle if there was a train coming; so you didn't hear any, and you knew there was no train coming? A. I suppose not, after none whistled. Q. So that was your idea; you were depending on the train whistling at the sounding board for your safety? A. If it had whistled, I wouldn't have gone in there."

"Just as I turned to go on the crossing there was a sign, 'Look out for the Cars!' In going up, as I made the turn going north, I did not look up and down the track. There was nothing to obstruct my view up and down the track. The sun was shining, and it was a bright, clear day. I did not stop ' my car as I made the turn, and look east and west up and down the railroad track, to see whether there was any cars or trains approaching. I did not look in either direction, and did not look for the cars. A man could have seen the train coming a mile or a mile and a half from either direction. The track was straight along there for several miles. I suppose a fellow would have to turn his head half way to the left to see the train approaching two miles away, after he made the turn to cross that crossing. I did not turn my head. I supposed the whistling board was there for the purpose of warning me. If I hadn't been bothered with the team, perhaps I might have looked. I was depending on the warning that they would give me at the whistling board, and that is the reason I did not look. I didn't look back at any time, coming along from Eagle Lake, before reaching the crossing, that I know of. I didn't look up and down this crossing to see whether or not there was a train coming. I could have seen the train coming if I had looked. There was nothing to keep me from it, and my eyes are good. Going at the rate of speed I was going, I could have stopped the car before I reached the railroad track. If I had looked up the track and seen the train coming, I could either have stopped the car or went on across. If Mr. Schrafft's team had not been on the other side of the crossing, I would have cleared the crossing. I can't say how far the team was from the crossing."

[1] The court is never warranted in charging the jury that the plaintiff is guilty of contributory negligence as a matter of law unless "when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the courts to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it." Lee v. Railway, 89 Tex. 588, 36 S. W. 65. Plaintiff's evidence shows that he was familiar with the crossing in question, that he knew about the schedule time of the train that struck his automobile, that, had he looked, he could have seen the train approaching a long distance before it reached the crossing, and that he did not look for a train before he drove upon the crossing because he did not hear the whistle blow, or the bell ring for the crossing. If his testimony went no further than this, we think that, in going upon the track under such circumstances, plaintiff was guilty of contributory negligence as a matter of

law; that is, that such act was so opposed to the dictates of common prudence that ordinary minds could not differ as to the conclusion to be drawn from it. Railway v. Edwards, 100 Tex. 23, 93 S. W. 106.

But do the facts of this case, considered as a whole, fill the requirements of the law in order to constitute contributory negligence as a matter of law? Plaintiff had been traveling along a public road parallel with the railroad and about 60 feet distant from it for some 3 or 4 miles. There was a whistling board on the railroad about a quarter of a mile before the crossing was reached, placed there by defendant to admonish its train operatives to sound the whistle at that point and to ring the bell from there to the road crossing, as required by law, to warn persons using or about to use the crossing of the approach of the train. Plaintiff says that these warnings were not given, and that, had they been given, he would have discovered the approach of the train and would not have gone upon the track, or he would have crossed it before the train reached that point. It is also shown by his testimony that about the time he passed the whistling board he passed a man in a wagon, and that the team became frightened at his automobile and tried to run away; that just as he made the turn into the road approaching the crossing he discovered on the opposite side of the track, and meeting him, a team of mules driven by Mr. Schrafft accompanied by his small son, and that this team also became frightened at his automobile and began to "cut up sand"; and that, seeing this, he lowered his speed and came to a stop on the track, his intention being to back his automobile off the track and let Mr. Schrafft and his team pass by on that side; that he did not shut off his engine, but threw the clutch out, just as he went on the track. He further says that his attention was "centered" on the frightened team of Mr. Schrafft. "If I hadn't been bothered with that team, perhaps I might have looked; passing one team that scared and meeting the other, it drawed a man's attention. It is the nature of a man who sees he is scaring a team to make an effort to get by it without making them run away." Again he says: "If Mr. Schrafft's team had not been on the other side of the crossing I would have cleared the crossing."

[2] The testimony was conflicting as to whether the whistle was sounded at the whistling board and whether the bell was rung; but all the witnesses agree that two short blasts of the whistle were given when the train was a very short distance from the crossing, but that the train was then too close for appellant to clear the track. These facts indicate negligence on the part of the plaintiff, but in our judgment they are not so conclusive as to exclude a difference of opinion among ordinary men as to whether plaintiff, in going upon the track, did what a man of ordinary

prudence would have done at the time and under like circumstances, and therefore did not warrant the holding that the plaintiff was guilty of contributory negligence as a matter of law. According to his testimony he was listening, but accounts for his failure to look by stating that his gaze was "centered" on the frightened team across the tracks. This and the necessary attention he had to give to his automobile in slowing it down and bringing it to a stop necessarily diverted his mind to some extent from the danger of collision from the oncoming train, and was the probable cause of his failure to observe it. It was at least such an excuse for his acts and omissions on the occasion as to entitle him to have the jury to pass upon the question of his contributory negligence.

Railway v. Edwards, 100 Tex. 23, 93 S. W. 106, relied upon by appellee, is a case in which it appeared that the injured person neither looked nor listened for the train before he stepped upon the track, although he was familiar with the crossing and knew of the frequent passing of trains, and he could have seen and heard it, had he done so; that he walked upon the track at night immediately in front of the moving locomotive, which was visible by its electric headlight for some distance, and the noise of its motion was plainly audible. He offered no excuse to justify him in the failure to use his senses of sight and hearing, or for taking no precaution whatever for his own safety, but relied alone upon the fact that the whistle was not blown nor the bell rung as required by the statute, claiming that he was listening for those signals, and, because he did not hear them, did not look for the train nor pay any attention to the noise it made. It was held that he was guilty of contributory negligence as a matter of law. The correctness of that decision cannot be doubted; but we think that the facts of that case are so dissimilar to the facts of this, in the particulars tending to excuse plaintiff for not looking for the train before going upon the track, as not to be authority for, or justify the court in, instructing a verdict against him. Railway v. Adkins, 56 Tex. Civ. App. 202, 120 S. W. 218; Frugia v. Railway, 36 Tex. Civ. App. 648, 82 S. W. 814; Chambers v. Railway, 56 Tex. Civ. App. 309, 120 S. W. 582.

[3] We do not mean to hold or intimate that the jury ought to find from the evidence that plaintiff was not guilty of contributory negligence; but we think that the evidence presents an issue of fact upon this question to be decided by the jury, and that the trial court erred in instructing the jury that plaintiff was guilty of contributory negligence as a matter of law in going upon the track. The fact that the court left it to the jury to determine whether such contributory negligence was a proximate cause of the injury did not cure the error, for it is clear that, if plaintiff was guilty of contributory negli-

gence as a matter of law, such contributory negligence was the proximate cause of the damages sustained. Nor was the error cured by the court submitting to the jury the question of plaintiff's negligence in *stopping* upon the track after he had gone upon it.

[4] The second assignment of error is predicated upon the refusal of the court to give the following special charge requested by plaintiff: "You are instructed that if those in charge of the engine which struck plaintiff's automobile failed to exercise ordinary care to keep a lookout in the direction the engine was moving to prevent injury to persons going along the public road and onto its said crossing at which plaintiff's vehicle was struck, and that the same was negligence on their part, and such negligence, if any, was the proximate cause of the accident and injury, if any, to plaintiff and his vehicle, and that the plaintiff was not guilty of negligence on his own part contributing to such injury, you will find for plaintiff against the defendant."

This charge was a correct presentation of the law under the facts proven, and its substance was not contained in the main charge. It should therefore have been given.

The remaining assignments of error presented by appellant have been carefully considered by us, and we are of the opinion that neither of them presents · grounds for reversal.

For the errors indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.