FT. WORTH & D. C. RY. CO. v. BERRY.
(No. 8004.)

(Court of Civil Appeals of Texas. Ft. Worth.
June 20, 1914.)

1. CARRIERS (§ 228*)—INJURY TO SHIPMENT OF LIVE STOCK—PRESUMPTIONS.
    Where live stock sustains injuries while being transported with ordinary care and reasonable diligence, it will be presumed that such injuries were caused solely by the inherent nature or proper vice of the animals, and not by any negligence of the carrier.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

2. CARRIERS (§ 205*)—INJURY TO SHIPMENT OF LIVE STOCK—NEGLIGENCE—LIABILITY.
    A carrier, not being an insurer of a shipment of live stock against increased risks necessary to the transportation, is not liable, unless negligent, for injuries to the stock.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 918, 920, 923; Dec. Dig. § 205.*]

3. CARRIERS (§ 215*)—INJURY TO SHIPMENT OF LIVE STOCK—INSTRUCTIONS.
    In an action for injuries to cattle unloaded by the owner at a dipping station pursuant to the shipment contract, and held for 14 days,

an instruction, authorizing the jury to find for plaintiff for injuries from delay during transportation, including the time they were thus unloaded, was erroneous.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 923; Dec. Dig. § 215.*]

4. TRIAL (§ 219*) — INSTRUCTIONS — DEFINITION OF TERMS.
    Where, in an action for injuries to a shipment of live stock, the court instructs that defendant is not liable for injuries due to the inherent vice of the animals, the meaning of the term "inherent vice" should be stated to the jury.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 489; Dec. Dig. § 219.*]

5. TRIAL (§ 252*)—SUBMISSION OF ISSUES—EVIDENCE.
    In an action for injuries to a shipment of cattle, it was error to submit to the jury the issue whether defendant's negligence contributed to the injury sustained by the cattle as the result of being dipped at a quarantine station, where there was no evidence bearing on such issue.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by J. H. Berry against the Ft. Worth & Denver City Railway Company. From judgment for plaintiff, defendant appeals. Reversed and remanded.

W. H. Francis and Thompson & Barwise, all of Ft. Worth, for appellant. H. D. Payne, of Ft. Worth, for appellee.

DUNKLIN, J. The Ft. Worth & Denver City Railway Company has appealed from a judgment rendered against it in favor of J. H. Berry for $726 as damages for a shipment of cattle from Ft. Worth to Amarillo. The suit was predicated upon allegations of rough handling and unreasonable delay in the shipment, all of which was alleged to be negligence, and that by reason of such negligence the cattle were bruised, skinned, crippled, and lost weight, and some of them were caused to die. The cattle were shipped from Ft. Worth to Amarillo under a contract allowing the owner the privilege of stopping them at Chillicothe for the purpose of having them dipped, in accordance with the governmental quarantine regulations. When the cattle reached Chillicothe they were unloaded and held at that place for 14 days and were dipped three times, several days intervening between the respective dippings. They were then reloaded on defendant's cars, carried to Amarillo, and there delivered to the plaintiff. None of the cattle in controversy died in transit, but all were delivered alive. They were delayed in reaching Amarillo approximately 12 hours on account of the wreck of a part of the train in which they were being shipped, which occurred about four miles south of Amarillo. The plaintiff accompanied the cattle in transit, and was present with them at the time of the wreck. There was no evidence tending to show any

delay chargeable to the defendant in the shipment between Ft. Worth and Amarillo, except that caused by the wreck and noted already, nor was there any evidence tending to show injury to the cattle while in transit, except such as was alleged to have been occasioned by reason of the wreck. In the wreck the cars in which the cattle were transported were not thrown from the track, and it does not appear that the cars themselves sustained any damage by reason of the wreck. According to testimony offered by the defendant the cars in which the cattle were transported were not shaken or jarred by the accident to any appreciable extent, and that the cattle suffered no injury by reason of the wreck. But according to the testimony of the plaintiff the jar to the cars caused the cattle to be thrown against and on top of each other and to be thereby bruised and skinned and seriously injured, from which injuries so sustained several of them died after they were delivered to the plaintiff, while the market value of others that did not die was greatly depreciated by reason of such injuries.

The court instructed the jury in part as follows:

"(3) I charge you that it is the duty of a railway company carrying live stock to receive, ship, and deliver them to the place of destination in as good condition as when received, less the natural shrinkage of cattle, when properly transported, and the inherent vice in the animal, if any.

"(4) If the animal has an inherent vice, and through the acts of the defendant while it has it in its possession the inherent vice is magnified or caused to make the animal suffer more and become of less value, then the defendant would be liable for that part of it which was the result of its negligence, if any, as that term is herein defined.

"(5) Under the pleadings in this case I limit your consideration to 269 head of cattle.

"(6) Applying the foregoing definitions to the facts of this case, I charge you that if you believe from a preponderance of the evidence, that plaintiff did deliver to the defendant his cattle for shipment in good condition for shipment from Ft. Worth, Tex., to Amarillo, Tex., with privilege of dipping at Chillicothe, and that the cattle while in the possession of the defendant were in a wreck or derailment, and that the defendant delivered the cattle at Amarillo, Tex., in an injured condition, then the defendant would be liable to the plaintiff for his damages as hereinafter directed, unless the injuries to said cattle, if any, were the result of the inherent vice in the animal, or that the injuries, if any, were caused by the dipping of the said cattle.

"(7) If the dipping of the cattle caused their injury, if any, then the defendant would not be liable therefor, unless its negligence, if any, as that term is herein defined, caused or contributed to said injury, in which event it would be responsible for all damages done thereby which would not have occurred but for the said negligence, if any, on its part.

"(8) The natural loss of weight or decrease of the animal, if any, will not be taken into consideration by you in estimating the damages, in this case, if any.

"(9) The term 'negligence' as used in this charge means the doing of an act that an ordinarily prudent man would not do under the same or similar circumstances, or the failure as to an act which an ordinarily prudent man would do under the same or similar circumstances.

"(10) If you find for the plaintiff under the foregoing instructions, you will assess his damages at such sum of money as the difference in the market value of the cattle, if any, at Amarillo, Tex., on June 23, 1912, in the condition in which they were delivered to the plaintiff, and what they would have been worth on that date and that place had they been delivered in good condition, less the usual and natural shrinkage, and less an injury to them, if any, done by the dipping independent of any act of negligence, if any, of the defendant."

Whether or not the defendant company is liable for the depreciation in the market value of the cattle, irrespective of the question of its negligence vel non in their transportation, is the principal question presented by several assignments of error addressed to the instructions quoted.

In G., C. & S. F. Ry. Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494, the railway company sought by a contract with a shipper of cattle to place various limitations upon its liability for the shipment, and in that case our Supreme Court used the following language:

"Under the statute of this state, a railway company must receive and transport live animals as other property, and, after receiving, it becomes an insurer of them, as in the case of other property which it is bound to transport, against loss from any cause except the act of God, or of the public enemy, the act of the owner, vicious propensities, or inherent character, or, as it is sometimes termed, the 'proper vice' of the animals. This is the liability imposed upon the common carrier by the common law, and the statute declares that the 'liabilities of carriers in this state shall be the same as prescribed by the common law.' Rev. Stats. 277. Such being 'their liability as it exists at common law,' the declaration of the statute that they 'shall not limit or restrict their liability as it exists at common law in any manner whatever,' and that 'no special agreement made in contravention of the foregoing provisions of this article shall be valid,' deprives such carriers of the right to limit their liability by contract, even as to matters in reference to which they might legally contract under the common law."

The case of G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45, was a suit for damages resulting from delay in transporting a car of lemons, and in that suit Judge Stayton, who also rendered the decision in the Trawick Case, supra, in discussing the common-law liability of a carrier, used the following language:

"For failure to carry and deliver, the carrier cannot excuse himself by reason of the fact that, through human agency not under his control, this was prevented without fault on his part; but if the property be wholly lost or partially decayed through some inherent quality, without fault on the part of the carrier, this will excuse the failure safely to carry and deliver, for the operation of the laws of nature working destruction or loss furnish the same excuse as do tempest, lightning, or other cause termed 'the act of God.'"

Following that language are quotations from Lord Mansfield in Forward v. Pittard, 1 Term Reports, 27, and Chief Justice Best in

Railway v. Horne, 5 Bingham, 550, giving the reasons for the common-law rule of liability of common carriers, the reasons in both quotations being, substantially, that it was to prevent collusion between the carrier and third persons to appropriate the goods and for the purpose of relieving the shipper of the necessity of going into circumstances impossible for him to unravel to show the cause of the loss of the goods. Following those quotations our Supreme Court continues as follows:

"The same reasons do not apply when the thing is actually transported and delivered, although when delivered it may be greatly diminished in value by a fall in the market price, or its value partially or entirely destroyed by reason of its inherent perishable nature which has worked its partial or entire destruction while in transit.

"The rule is thus stated by a recent text-writer, in accordance with the views expressed by many others: 'But the reasons upon which the extraordinary responsibility of the common carrier for the safety of the goods is founded do not require that the same responsibility should be extended to the time occupied in their transportation. The danger of loss by robbery or embezzlement or theft by collusion and fraud on his part has no application when the mere time of the carriage is concerned. "His first duty," it is said, "is to carry the goods safely, and the second to deliver them; and it would be very hard to oblige the carrier, in case of any obstruction, to risk the safety of the goods in order to prevent delay. His duty is to deliver the goods 'within a reasonable time,' which is a term implied by the law in the contract to deliver, as Tindal, C. J., puts it when he says, 'the duty to deliver within a reasonable time being merely a term ingrafted by legal implication upon the promise or duty to deliver generally.' In this respect, therefore, the common carrier stands upon the same ground with other bailees, and may excuse delay in delivery of goods by accident or misfortune, although not inevitable or produced by the act of God. All that can be required of him in such an emergency is that he shall exercise due care and diligence to guard against the delay, and that if it occur without his fault or negligence, he shall omit no reasonable efforts to secure the safety of the goods." ' Hutch. on Carr. § 330. See, also, §§ 331–35, 292. * * *"

Continuing our Supreme Court said:

"To the extent the fruit may have deteriorated on account of its perishing nature while in transit, the facts pleaded would furnish a defense if defendant bestowed upon it proper care; for in such case such a loss would be attributed solely to the decay, which the answer excuses."

It will be noted that in the decision last quoted damages to the goods resulting from delay in shipment was the only basis for the recovery sought. To the same effect is G., C. & S. F. Ry. Co. v. Gatewood, 79 Tex. 89, 14 S. W. 913, 10 L. R. A. 419; I. & G. N. Ry. Co. v. Hynes, 3 Tex. Civ. App. 20, 21 S. W. 622; Sterling v. St. L., I. M. & S. Ry. Co., 38 Tex. Civ. App. 451, 86 S. W. 655.

In G., C. & S. F. Ry. Co. v. Ellison, 70 Tex. 491, 7 S. W. 785, which was a suit to recover damages for injuries to cattle resulting from the failure of the railway company to transport them within a reasonable time, and also from rough handling, our Supreme Court said:

"Although the appellant may not have contracted to transport the cattle on a train devoted to that purpose exclusively, or to transport them at any given rate of speed, yet it was its duty to transport them with all reasonable dispatch, having in view the character of the freight and its liability to injury from long detention on the cars; and facts tending to show that this was not done were admissible.

"A witness, in explaining how the cattle were injured, stated that 'the jerking in starting and stopping so often would throw said cattle off their feet, and in consequence they were crippled and bruised.' It was further shown that the manner of starting and stopping the train was rough, and that from this injury resulted. In the transportation of cattle or any other freight it is the duty of a railway company so to manage its cars as to protect it, as far as this can be done by the use of proper care, from injury, and if it fails to do so it is liable."

In Elliott on Railroads it is said:

"It is not, perhaps, strictly correct to say that the rule that the carrier is not liable for injuries resulting from the inherent nature or propensities of the stock is an exception to the common-law rule governing the liability of common carriers, for this was the rule at common law respecting other kinds of property, as well as with respect to live stock and was frequently applied to shipments of fruit and other perishable articles. But whether it should be treated as an exception to the general rule or not, it is well settled that, although insurers in other respects to the same extent as at common law in the carriage of goods, railroad companies are not liable as insurers for losses and injuries caused to live stock by the inherent nature and propensities of the animals." 4 Elliott on Railroads, § 1546.

In T. & N. O. Ry. Co. v. Drahn, 157 S. W. 283, it was said:

"The contract of a common carrier with a shipper of commodities (article 731, R. S. 1911) is 'for the safe and speedy' transportation thereof from point of shipment to destination, not for the exercise of ordinary care to deliver the property."

That announcement, however, was not necessary to an affirmance of the judgment, for in a preceding part of the opinion, the following occurs:

"The pleading and evidence show a contract for through shipment, a delivery of the cattle in an uninjured condition, and a redelivery at final destination with many of the animals dead and the others severely injured. No one accompanied the cattle for the shipper. Under these circumstances there arises a presumption of negligence on the part of the carrier which, in the absence of any explanation whatever, becomes conclusive. F. W. & D. C. Ry. Co. v. Shanley, 36 Tex. Civ. App. 291, 81 S. W. 1014, and authorities there cited. So that if in every shipping case where live stock are involved negligence must be shown the rule is met in this case."

In the following cases it was held that the carrier of live stock is not responsible for any injuries thereto except those occasioned by its negligence: St. L. & S. W. Ry. Co. v. Lewellen, 116 S. W. 116; Freeman v. Cain, 133 S. W. 894; St. L. & S. W. Ry. Co. v. Smith, 33 Tex. Civ. App. 520, 77 S. W. 28; F. W. & D. C. Ry. Co. v. Lock, 30 Tex. Civ. App. 426, 70 S. W. 457; Tex. Cent. R. R. Co. v. Hunter, 104 S. W. 1075; T. & P. Ry. Co. v. Snyder, 86 S. W. 1041; T. & P. Ry. Co. v. Stewart, 52 Tex. Civ. App. 514, 114 S. W. 413.

In Tex. Cen. R. R. Co. v. Watson, 54 Tex. Civ. App. 509, 118 S. W. 175, it was held that the railway company was liable for such injuries only to a shipment of household goods as resulted from its negligence in handling them.

In Waggoner v. M., K. & T. Ry. Co. (Cr. App.) 92 S. W. 1028, it was held that negligence is the test of liability of a common carrier for damages resulting to shipments both of live stock and dead freight.

[1] The contract of shipment necessarily contemplated that the cattle would be taken from their accustomed range and confined in cars where, even though handled with all possible care, they would be subjected to some jolting and jarring, fright and excitement, by reason of their changed surroundings, more danger of injuring each other, and with more limited access to feed and water, all of which changes naturally tended to a deterioration in their condition. In determining whether or not their injuries during shipment were due to the inherent nature or proper vice of the animals, these changed conditions must be taken into consideration, for necessarily the injuries from the inherent nature of the animals would be greater during shipment than upon their accustomed range. It would be unreasonable to hold the carrier as an insurer against these increased risks which were made absolutely necessary in order to transport the cattle, and the reasons upon which the common-law rule is based do not require it. In order to determine whether injuries sustained resulted from their inherent nature, the manner of their transportation must necessarily be considered. If they were transported with ordinary care and with reasonable diligence, then the injuries sustained would be attributed solely to the inherent nature or proper vice of the animals, which, under the common-law rule for the shipment of either live stock or inanimate freight, would not be chargeable to the carrier. See G., C. & S. F. Ry. Co. v. Levi, supra.

[2] It follows from the foregoing conclusions that the issue of negligence was necessarily involved, and that in the absence of any negligence on the part of the railroad company in the transportation of the cattle, it would not be liable for the damages sought. Indeed, plaintiff seemed to recognize the necessity of showing negligence, in that he expressly alleged that the delay and rough handling of the cattle constituted negligence, and that such negligence was the proximate cause of the injuries to the cattle.

We have been cited to no evidence in the record tending to explain the cause of the wreck referred to, and in the absence of any explanation tending to show that it did not happen through any negligence of the defendant, it might be argued that negligence in not avoiding the wreck and the delay caused thereby could be presumed, and that, in so far as damages for injuries resulted from the wreck and the delay caused thereby, the charge shows no reversible error, since the court could have peremptorily instructed the jury to find that the injuries so caused were due to defendant's negligence. Cleburne St. Ry. Co. v. Barnes (No. 7995) 168 S. W. 991, by this court and not yet officially reported; T. & N. O. Ry. Co. v. Drahn, supra.

[3] Even if this view should be adopted, it would not relieve other errors in the charge. As noted already, there was a delay of approximately 12 hours by reason of the wreck, and plaintiff introduced testimony tending to show, as alleged in his petition, that such a delay did cause injury to the cattle. If that be true, as the jury would have been authorized to find under the evidence, then under the charge they would have been authorized to find, further, that the delay of 14 days in Chillicothe, when the cattle were not even in the possession of the defendant, also caused injury to them, and under the charge they would have been warranted in assessing damages against the defendant for injuries caused by that delay also. For the reasons noted the charge quoted was erroneous, and for such error the judgment must be reversed.

[4] In view of other assignments we deem it proper to suggest that upon another trial some explanation should be given to the jury of what is meant by "inherent vice" of the cattle, as without such explanation, it is not probable that the jury would understand the legal significance of that expression.

[5] We are of the opinion, further, that there was error in the instruction submitting as an issue whether or not the negligence of the defendant contributed to the injury sustained by the cattle as a result of dipping, since we have found no evidence in the record bearing upon that issue. The several special requested instructions of appellant, and on the refusal of which several assignments are predicated, seem to have been substantially covered in the main charge.

For the errors indicated, the judgment is reversed, and the cause remanded.

SPEER, J., not sitting.