FT. WORTH & D. C. RY. CO. v. FT. WORTH HORSE & MULE CO. (No. 8269.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 13, 1915. Rehearing Denied Dec. 18, 1915.)

1. CARRIERS ⬅➡230 — CARRIAGE OF LIVE STOCK — INJURY — CONTRIBUTORY NEGLIGENCE—DECLARATION AS MATTER OF LAW.

In an action for injury to a shipment of live stock, the court can declare that the evidence establishes contributory negligence on the part of the shipper or his agents as a matter of law only where there has been a violation of some statute or where the evidence is without material conflict and admits of no other reasonable conclusion.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ⬅➡230.]

2. CARRIERS ⬅➡230 — CARRIAGE OF LIVE STOCK — INJURY — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for injury to a mare in transit, whether the plaintiff's own agent had been guilty of contributory negligence in continuing shipment of the mare after she was kicked in the shipping pens, held for the jury under the evidence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ⬅➡230.]

3. CARRIERS ⬅➡216—CARRIAGE OF LIVE STOCK —LIABILITY FOR INJURIES—CHARACTER OF ANIMALS.

Where the proximate cause of the death of a mare in transit was a kick from another horse while in the shipping pens, not brought about by any negligence of the railroad's servants, and not followed by any negligence of the road in the further transportation of the mare, proximately contributing to her death, the road was not liable therefor, since in shipments of live stock the carrier is not liable for injury arising only from the inherent nature or vicious disposition of the animal.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 929; Dec. Dig. ⬅➡216.]

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. CARRIERS ⟨⟩217 — CARRIAGE OF LIVE STOCK—INJURY TO MARE—LIABILITY.

Where a mare was seriously injured either in the cars or by being kicked by another mare in the shipping pens, and the shipper's agent had knowledge of the fact, and knew, or might have known by the exercise of due care, the danger of further transporting such mare, and declined to unload her and to take such reasonable precautions as might have resulted in her recovery, taking a chance on it, and the further transportation, unaccompanied by any negligence on the part of the railroad's servants, resulted in the mare's death, the road was not liable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 931; Dec. Dig. ⟨⟩217.]

5. CARRIERS ⟨⟩217 — CARRIAGE OF LIVE STOCK — INJURY TO MARE — CONTRIBUTORY NEGLIGENCE.

Where the agent of the shipper of a mare, after discovering the animal's injured condition in the cars, directed that she be shipped on through and not removed from the train, which was negligence on his part proximately contributing to such mare's death, the shipper could not recover therefor from the railroad, although its servants were also negligent in the further transportation, since after the discovery of an injury, even if wrongfully occasioned, the duty rests upon the owner of the injured property to exercise reasonable care to save it or lessen the injury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 931; Dec. Dig. ⟨⟩217.]

Appeal from Tarrant County Court; Charles T. Prewitt, Judge.

Action by the Ft. Worth Horse & Mule Company against the Ft. Worth & Denver City Railway Company. Judgment for plaintiff for $125, and defendant appeals. Reversed, and cause remanded.

Thompson & Barwise and George Thompson, Jr., all of Ft. Worth, for appellant. M. B. Harris, of Ft. Worth, for appellee.

CONNER, C. J. The Ft. Worth Horse & Mule Company instituted this suit against the Ft. Worth & Denver City Railway Company to recover the value of one mare worth, as alleged, $150, and which it was alleged had been killed as a result of negligence on the part of the railway company while being transported from Pueblo, Colo., to Ft. Worth, Tex. On a trial in a justice court appellee recovered a judgment for the sum of $125, and later on appeal to the county court in a de novo trial the plaintiff recovered a like judgment, from which the railway company has prosecuted this appeal.

[1, 2] H. J. Gray, who accompanied the shipment in question and who acted as appellee's agent in handling the shipment, among other things, testified to the effect that the mare in question, which was one of a carload being transported, had been injured by the jamming of the cars together while switching at Amarillo, whereby the animal had been thrown to the floor of the car and injured by other horses falling over and against her, etc. The testimony offered in behalf of appellant, however, tended to show that the mare had been kicked and seriously injured by one of the other horses while in the shipping pens at Amarillo, of which the said Gray had been informed and thereupon advised to take the mare out of the shipment and leave her at Amarillo. It is urged under the first assignment that the evidence establishes contributory negligence on the part of appellee's said agent or representative as a matter of law. This can be declared only where there has been a violation of some statutory enactment, or where the evidence is without material conflict and admits of no other reasonable conclusion. Adams v. Railway Co., 164 S. W. 853. As stated, there was evidence, and much evidence, to the effect that the mare had been kicked and seriously injured by another animal in the pens, and that the appellee's caretaker had been informed of that fact and afforded an opportunity to unload the animal in question with a view of her ultimate recovery. But the agent denied that the animal had been kicked, and some of his testimony is susceptible of the construction that he did not apprehend the extent of the mare's injury, so that we have not felt prepared to sustain appellant's first assignment of error.

We do think, however, that the defensive issues should have been submitted to the jury, and error has been assigned to the court's refusal to do so, and these assignments we think must be sustained. Among other things, after having testified that the cars were jammed as a result of which the mare was thrown against the end of the car and thus injured, H. J. Gray testified that she, the mare—

"appeared to be hurt. She was hurt across the loins and across the back. She would try to get up, and she could not get up in her hind parts; she would get up with her front feet, and could not get up with her hind parts; she was hurt in the back. She was broke down in the back; that is where I pronounced her hurt. The trainmen and I got her up again, and put a 2x6 between her and the others, and left her standing up in the end of the car. The train stopped there quite awhile, and they thought I had better unload her, and the train was waiting there awhile, and she seemed to be strengthening up, and I thought maybe she would ride; the train was just about ready to pull out, so I took a chance on her riding, and after they started up she went back down, and never did get up any more. * * * There was no way of telling how badly she was hurt; you could not tell just exactly; you had to guess at it; just took a chance on it, and that was all. * * * These men asked me hadn't I better unload this animal, but she was up on her feet, and I says, 'Maybe she will go through and make the trip all right, and I will let her go;' we never took her out of the car. They told me she had been kicked, and I told them she had not been kicked."

W. T. Graham testified, among other things:

"I remember this shipment because the man in charge of the stock at first decided to unload these animals at the pens on account of this mare being injured; after we put them in the train he decided to unload them, and we took

the car out of the train on the main line, and he stopped us and said the injured animal might just as well die in the car as in the pen, if she was going to die, and for us to put the car back and let them go on. This circumstance caused me to remember this particular shipment. * * * The animal that was injured in the pens got down after she got in the car, and then got up, and trembled and sunk down again. We got the injured animal up after she was loaded into the car and had gotten down, but that was about all it could do, on account of the injury it had received from being kicked by another mare while in the pens, and it was not due to any jamming of the car; the animal was in bad shape, and was not able to stay up, on account of the injury it had received in the pens."

R. E. L. Smith testified, among other things that:

"When the man in charge of the stock came from the restaurant where he had been eating, I explained the case. He walked up and says, 'What is the matter?' A crowd was standing around there, and I explained the case to him; also I made the suggestion that he take the stock and unload it, and get a veterinary to take charge of the animal, and he finally decided to do it, and he says, 'Well, I believe I will do that;' so we set the car for the main line and put the caboose back on the train and it stayed there probably several minutes—10 or 12 minutes—and he says, 'If you boys will be good enough to put the stock back on the train, I will take her on.' He made the statement to us and we went and cut the caboose off and put the car of stock on the train, and he says, 'I hate to lose the market in Ft. Worth.' He says, 'I would rather lose the animal than lose the market at Ft. Worth.' "

[3] There was other testimony of like tendency, but enough has been quoted to illustrate the conclusions we have reached. We think it must now be settled that in shipments of live stock the carrier is not liable for injuries arising alone from the inherent nature, disposition, or vice of the animals. Railway v. Berry, 170 S. W. 125. So that, if the proximate cause of the death of the animal under consideration was a kick or kicks by other animals while in the pens at Amarillo, not brought about or induced by any negligence on the part of appellant's servants, and not followed by any negligence of appellant in the further transportation proximately contributing to the final result, then appellant was entitled to a verdict in its favor, and the jury should have been so instructed.

[4] Or in whatever way the injury may have been brought about, if the mare was seriously injured at Amarillo, either in the pens or in the cars, and knowledge of this fact was brought home to appellee's caretaker, or agent, and he either knew, or might have known by the exercise of due care, the danger of further transportation, and with such knowledge declined to unload her and to take such reasonable care and precaution as might have resulted in the mare's recovery, and, as he expresses it, "took a chance on it," and the further transportation, unaccompanied by any negligence on the part of appellant's servants, resulted in the death of the mare, then also would appellant have been entitled to a verdict. In such a state of the evidence, should the jury so find, appellee's servant must be held to have deliberately assumed the risk of the mare's death.

[5] Or, if after a discovery of the mare's injured condition at Amarillo, the direction of appellee's agent to continue her shipment constituted under all of the circumstances, such a want of ordinary care as would amount to negligence on his part, and if such negligence proximately contributed to the final result, then it would be the duty of the jury to find for appellant, notwithstanding there may also have been negligence on the part of appellant's servants in the further transportation, as well as in bringing about the injury. For the law is that, after the discovery of an injury, even wrongfully occasioned, the duty rests upon the owner of the property injured to exercise reasonable care to save it or to lessen the injury, if it can be done. K. C., M. & O. Ry. Co. v. McCunningham, 149· S. W. 420.

We concluded that appellant was entitled to have the several theories we have suggested arising from the evidence presented in appropriate instructions to the jury. This was not done, although appellant properly excepted to the court's charge and requested several special instructions which at least suggested such defenses. See Olds Motor Co. v. Churchill, 175 S. W. 785.

It is ordered that the judgment be reversed, and the cause remanded for a new trial.