GALVESTON, H. & S. A. RY. CO. et al. v.
CROWLEY et al.  (No. 9073.)

(Court of Civil Appeals of Texas. Ft. Worth.
May 10, 1919.  Rehearing Denied June 14,
1919.)

1. NEGLIGENCE ⟐82—CONTRIBUTORY NEG-
LIGENCE—DISTINCTION FROM DEFENDANT'S
NEGLIGENCE—RECOVERY.

The rule that plaintiff may not profit by
his own negligence, concurring with that of
another, does not apply where damages result-
ing from defendant's negligence can be sep-
arated and distinguished from those resulting
from plaintiff's contributory negligence, in which
case recovery is limited to consequences flowing
from defendant's negligence alone.

2. CARRIERS ⟐216—INJURY TO SHIPMENT OF
LIVE STOCK — NEGLIGENCE — INHERENT DE-
FECTS—LIABILITY.

A carrier not being an insurer of a ship-
ment of live stock against injuries resulting
from the poor and weakened condition of the
stock is not liable for such injuries. but only
for injuries arising from its own negligent acts
or omissions.

3. CARRIERS ⟐228(5)—INJURY TO SHIPMENT
OF LIVE STOCK — DEFENSE — BURDEN OF
PROOF.

In an action for injuries to a shipment of
cattle, the burden is upon the carriers to sus-
tain the defense of contributory negligence by a
preponderance of the evidence.

4. CARRIERS ⟐228(1)—INJURY TO SHIPMENT
OF LIVE STOCK—NEGLIGENCE—BURDEN OF
SHOWING.

In action for injuries to a shipment of cattle
while in transit, the burden is upon plaintiffs to
show that they were negligently handled en
route, where one representing plaintiffs accom-
panied the cattle throughout the entire trip.

5. CARRIERS ⟐230(4) — INJURY TO LIVE
STOCK—SUBMISSION OF ISSUES—EVIDENCE.

Testimony of a caretaker accompanying a
shipment of cattle that at one station the train
was cut in two, and one part was switched out
of his sight, held insufficient to warrant submis-
sion of the carrier's negligence in handling the
train, such caretaker also having testified that
when the train is in motion the cattle will
stand and ride, and when not in motion will
fight, lie down, and be trampled upon.

6. TRIAL ⟐351(5)—SUBMISSION OF ISSUES—
DAMAGES—PROXIMATE CAUSE.

In an action for injuries to a shipment of
cattle, it was error to refuse to submit affirm-
atively the issue requested by defendants as
to whether the damage complained of was the
sole result of the cattle being too poor or weak
to stand ordinary transportation from M. to
F., though it was submitted inferentially and
in a negative form in other issues.

7. TRIAL ⟐351(2) — SPECIAL ISSUES — RE-
QUESTS—SUFFICIENCY.

In view of Vernon's Sayles' Ann. Civ. St.
1914, art. 1612, a requested special issue as to
proximate cause of injury to cattle in trans-
portation was improperly refused, though re-
quest was insufficient, because using term "or-
dinary transportation," where defendant by
special exceptions to main charge called court's
attention to omission to charge on that issue,
and stated that it should be specially submit-
ted.

Appeal from District Court, Tarrant Coun-
ty; R. E. L. Ray, Judge.

Action by A. F. Crowley and another
against the Galveston, Harrisburg & San
Antonio Railway Company and the Houston
& Texas Central Railway Company.  Judg-
ment for plaintiffs, and defendants appeal.
Reversed and remanded.

Thompson, Banuse & Wharton, of Ft.
Worth, and Baker, Botts, Parker & Garwood,
of Houston, for appellants.
Bryan, Stone & Wade, of Ft. Worth, for
appellees.

DUNKLIN, J.  The Galveston, Harrisburg &
San Antonio Railway Company and the Hous-
ton & Texas Central Railway Company have
appealed from a judgment rendered against
them in favor of A. F. and R. E. Crowley for
damages claimed by plaintiffs as the result
of alleged negligence of the defendants in the
shipment of 264 head of cattle from Marfa,
Tex., over the railway of the defendant first
named, which was the initial carrier from
Marfa to Flatonia, and from the latter sta-
tion to Ft. Worth over the railway of the
Houston & Texas Central Railway Company,
which was the delivering carrier.  The judg-
ment against the initial carrier was for
$219.50, and that against the other defendant
was for $257.35.

The plaintiffs' petition contained the usual
allegations of rough handling and delay in
shipment, all charged as negligence and as
the proximate cause of injury to the cattle
for which damages were sought.

In addition to general denials, both defend-
ants pleaded specially that when plaintiffs
tendered the cattle for shipment at Marfa
the animals were poor in flesh and weak, and
therefore in an improper condition for ship-
ment, and that in undertaking to have them
shipped in that condition plaintiffs were
themselves guilty of negligence, proximately
contributing to the injuries sustained by the
cattle during shipment, which constituted a
bar to a recovery, even though it could be
said that defendants were also guilty of the
negligence complained of which likewise con-
tributed to said injuries.

The trial was before a jury, to whom the
case was submitted on special issues, and
who, in answer thereto, found that the cattle
were unnecessarily delayed in transit and
roughly handled by both defendants, and that
such delay and rough handling constituted
negligence which was the proximate cause of

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

injury to the cattle, for which damages were awarded.

Prior to the loading of the cattle at Marfa they were driven from Presidio, a distance of 63 miles, the trip consuming four or six days, and evidence was introduced tending to show that when loaded on the cars at Marfa the cattle were poor in flesh and in a weakened condition. There was further testimony which tended to show that the shipment from Marfa to Ft. Worth over the different lines of railway was made with reasonable dispatch, and without any unnecessary rough handling of the cars in which the cattle were shipped. Predicated upon such evidence, appellants have assigned error to the refusal of the court to submit to the jury the issue tendered by their pleadings of contributory negligence on the part of plaintiffs in undertaking to ship the cattle in their poor and weakened condition. Whether or not the defense of contributory negligence of the shipper bars a recovery in undertaking to ship animals which are not in a proper condition for shipment by reason of their weakened condition is a question which has never been passed on by the Supreme Court of this state, so far as we have been able to discover.

In M., K. & T. Ry. Co. v. Chittim, 24 Tex. Civ. App. 599, 60 S. W. 284, the Court of Appeals of the Fourth District used the following language in refusing to sustain an assignment in which the complaint was made of the refusal of a requested instruction to the effect that plaintiff could not recover damages for a shipment of cattle if he himself was guilty of negligence in failing to unload them for the purpose of feeding, watering, and resting them every 28 hours:

"Though plaintiff may have been negligent in failing to unload, feed, water, and rest his cattle, yet such negligence would only preclude him from recovering such damages as ensued therefrom, and would not bar his recovery of damages that were proximately caused by the negligence of appellant."

But the same court in the case of St. L., B. & M. Ry. Co. v. Moss, 203 S. W. 777, used the following language in discussing the defense of contributory negligence on the part of the plaintiff in placing vicious bulls together in the same car and unconfined:

"The court proceeded upon the theory that in order to preclude a recovery the negligence of appellee in placing vicious bulls unconfined in a car together must have been the sole proximate cause of the injury to the bulls, while the law is that if the negligence of appellee contributed to the injury to the bulls he could not recover. Contributory negligence is a complete defense to an action based on the negligence of the defendant * * * in producing the result. This is the rule in every case in which a different rule is not laid down by statute, as in cases of comparative negligence. Any negligence of a plaintiff which is a proximate cause

of the injury of which complaint is made will prevent a recovery, no matter how negligent the defendant may have been."

In the case of G., C. & S. A. Ry. Co. v. Trawick, 80 Tex. 270, 15 S. W. 568, 18 S. W. 948, which was a suit for damages to a shipment of cattle, and in which damages were claimed for injuries resulting to them by reason of being confined in unsuitable pens which were provided by the railway company, the Supreme Court, after citing the statute which requires railway companies to provide at their stations suitable inclosures in which to keep freight of every description, used the following language:

"We think this statute requires railway companies to keep pens for the shipment of cattle, and that they cannot absolve themselves from their statutory duty to keep such as are suitable for the business by showing that they were so badly kept or constructed as to make it contributory negligence upon the part of the shipper to use them."

The decisions in Ry. Co. v. Chittim and Ry. Co. v. Trawick more nearly approach the contention of appellees to the effect that the defense of contributory negligence, if established, would not preclude a recovery, than any other authorities cited.

The following authorities are cited by them in support of their proposition that if the cattle were in a weakened condition when tendered for shipment, and such condition proximately contributed to the injuries sustained by them, the shipper would lose such damages as resulted from such weakened condition of the cattle, and the defendants would be liable for such damages as resulted from their negligence: F. W. & D. C. Ry. v. Alexander, 36 Tex. Civ. App. 297, 81 S. W. 1015; G., H. & S. A. Ry. Co. v. Powers, 54 Tex. Civ. App. 168, 117 S. W. 459; G., H. & S. A. Ry. Co. v. Jones, 123 S. W. 737. But in those decisions it does not seem that the question now under discussion was considered, since the specific issue of contributory negligence as a complete defense to a recovery for any amount was not involved.

The case of St. L. S. W. Ry. Co. v. Ferguson, 26 Tex. Civ. App. 460, 64 S. W. 797, was a suit for damages for personal injuries sustained by plaintiff's wife while a passenger on a railway train. Plaintiff's wife was in a delicate condition when she undertook the trip, and one of the defenses urged was that she was guilty of contributory negligence in undertaking the trip while in that condition. That defense was submitted as a complete defense by the trial court to the jury to the cause of action, and in commenting upon that portion of the charge this court used the following language:

"The court * * * properly instructed the jury, in addition to what has been stated, that, if they found it was dangerous to the wife's safety for plaintiff and wife to have undertaken

the journey from St. Louis, Mo., and that in undertaking the journey from said point to Frost, Tex., they failed to exercise ordinary care, and that such want of care proximately contributed to the wife's injury, that they should find for the defendant."

In H. & T. C. Ry. Co. v. Burns, 41 Tex. Civ. App. 83, 90 S. W. 688, there was evidence to the effect that calves which were shipped over the railway, and for the loss of which damages were sought and recovered, died from pneumonia. The plaintiff contended that such disease of the animals was caused as a result of negligent handling by the railway company. The railway company contended that the calves contracted pneumonia as a result of being loaded into the car and started on their journey while hot and tired from a long drive from plaintiff's ranch and their sudden cooling in consequence of the movement of the train after they were loaded. In discussing that defense the Court of Appeals used the following language:

"The jury were instructed that, if the appellee was guilty of negligence which proximately contributed to the death of the calves, they should find for the defendants. It is objected by appellant that they should have been further instructed that this would result regardless of any question of negligence on the part of defendants, and a charge was asked so instructing the jury, which was refused, and the giving and refusal of these instructions is assigned as error. We think the requested charge should have been given."

The case of T. & P. Ry. Co. v. Rea, 74 S. W. 939, was a suit by Rea for damages for injuries to his wife by reason of the failure of the railway company to provide her with seating accommodations while she was a passenger on the train, and as a result of which failure she was compelled to stand and hold an infant child in her arms, and to thereby sustain the injury complained of. In disposing of that case the court used the following language:

"The issue of contributory negligence on the part of the plaintiff in boarding a crowded car, and not relieving his wife of the burden of the child, was properly submitted to the jury for their determination, the evidence not being conclusive in favor of the defendant on this issue."

In the case of St. L. S. W. Ry. Co. v. Arey, 107 Tex. 366, 179 S. W. 860, L. R. A. 1918B, 1065, our Supreme Court held that the negligence of the owner of a barn adjacent to the railway right of way, in leaving open a window which faced the right of way, and with the interior of the building littered with loose straw, would bar a recovery by him for the negligence of the railway company in setting fire to the barn from sparks which escaped from a passing locomotive. And in the course of the opinion rendered by Chief Justice Phillips in that case, after adverting to the right of the owner of the premises to free enjoyment of the same for all lawful purposes, and to the general rule that he is not bound to anticipate the negligence of another, the following language was used:

"But the doctrine of contributory negligence is not related to these considerations and is not defeated by them. It is founded, as has been said, on the mutuality of the wrong, the impolicy of allowing a party to recover for his own wrong, and the policy of making personal interests of men dependent upon their own prudence and care."

In the case of Ft. W. & D. C. Ry. Co. v. Ft. W. Horse & Mule Co., 180 S. W. 1170, it was held that the negligence of a shipper in directing the railway company to continue the shipment of a mare after she had been injured en route, and the shipper had been given an opportunity to unload her, would be a full defense to a recovery for damages for the injury so sustained which was occasioned by the negligence of the railway company.

In the case of I. & G. N. Ry. Co. v. Drought, 100 S. W. 1011, and T. & P. Ry. Co. v. Edins, 36 Tex. Civ. App. 639, 83 S. W. 253, it was held that where a shipper assumes the duty of loading the cars the carrier cannot be held liable for damages resulting from an improper loading.

In M., K. & T. Ry. Co. v. Belcher, 41 S. W. 706, it was held that the negligence of the shipper in charge of cattle during transportation, who abandoned the cattle before reaching destination, and while many of them were down in the car, was a defense to plaintiff's suit to recover damages for such injuries.

It is also well settled by the authorities that where the evidence is prima facie sufficient to sustain a defense it is reversible error to refuse to submit such defense to the jury in an affirmative manner. M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058.

At the request of appellants the trial court gave to the jury the following instructions:

"You are instructed that in answering the special issues and in arriving at your verdict in this case that, if you should find that the plaintiffs are entitled to recover herein, you cannot assess any damages, if any, against these defendants for injuries, if any, which said cattle or any of them may have sustained while being driven from the pasture where they were in the Republic of Mexico to Marfa, Texas, where they were loaded on the cars.

"You are instructed that in answering the special issues herein, and in arriving at your verdict, that as to the damages, if any, resulting to said cattle, or any of them, as a result of said cattle being poor, thin, and weak, if any, that as to such damage you will not assess the same against the defendants.

"You are instructed that in answering the special issues submitted to you by the court you are instructed that the defendants herein are only liable for such damages, if any, as were caused by their own negligence."

Thus it will be seen that under the instructions of the court the jury could not have allowed any damages resulting from the weakened condition of the animals, if they found defendants liable.

In addition to the testimony of several witnesses to the effect that when the cattle were received at Marfa for shipment they were poor, thin, and weak, and that when they reached San Antonio with a good run, and without any unusual rough handling, there were seven dead in the cars, having been trampled upon and showing wounds and bruises therefrom, A. O. Hubbard, witness for plaintiff, who was the station agent at Marfa, and received the cattle for the G., H. & S. A. Ry. Co., testified that he had had 40 years' experience in handling and shipping cattle by rail for long distances, and further testified as follows:

"The cattle in question were in a poor, thin, and weak condition generally, and in my opinion, based upon my observation and experience, were not in a condition to stand ordinary transportation by rail for a long distance without loss."

That was the only testimony of an expert character introduced to show that the cattle were not in a fit condition for a long journey, and it will be noted that even that witness did not give any opinion as to whether or not the cattle were too weak to stand the trip that was made.

The shipping contract signed by plaintiffs' agent for the shipment contained a statement that the cattle were "poor, thin, and weak," and stipulated that defendants would be exempt from liability for loss or damage arising from the cattle being in that condition.

The trip from Marfa to Ft. Worth was made in approximately 45 hours, but the cattle were unloaded at San Antonio, and were there fed, watered, and rested for about 10 hours.

[1] As gleaned from the authorities generally, and especially from the quotation above from the opinion of Chief Justice Phillips in the case of Ry. Co. v. Arey, the underlying principle of the time-honored common-law rule, which makes contributory negligence of the plaintiff a defense to his suit to recover for the negligence of another, is that it would be contrary to sound public policy, and violative of one of the maxims of equity, to allow him to profit by his own negligence, which he would do, in part, if he is awarded damages resulting from the joint and concurring negligence of himself and another. But that rule has no application when damages resulting from the negligence of the defendant can be separated and distinguished from those resulting from plaintiff's own negligence, and in a case where that can be done his recovery is limited to consequences flowing from the defendant's negligence alone.

[2] The common-law rule applicable to common carriers has always been that no recovery can be had for injuries resulting from the inherent vices of the commodity shipped which would include the poor and weakened condition of live stock. And the discussion of that question in nearly all the authorities which we have examined has proceeded upon the theory that damages resulting from injuries of that origin can be separated from those resulting from the negligent acts or omissions of the carrier, and a recovery could be allowed for the latter injuries only. It seems to us that in some instances the facts might be of such a conclusive nature as to warrant a court to so conclude as a matter of law, but that in some circumstances it might be a question of fact to be determined by the jury from the facts proved.

The policy of the common law was that a common carrier should be held to a strict accountability for property which he undertakes to transport. Many authorities announce in general terms that he is an insurer of the property against all loss except those resulting from the act of God or the public enemy or the inherent vices of the property shipped, although in the shipment of live stock the issue of negligence on the part of the carrier is usually involved. Ft. W. & D. C. Ry. Co. v. Berry, 170 S. W. 125.

However, we do not believe that public policy in that respect is of higher importance than that which forbids that one should profit by his own wrong by a recovery for an injury which was the result of the joint and concurring negligence of himself and of the defendant. The decisions noted sustaining the defense of contributory negligence in suits against railway companies involving live stock shipments in effect give controlling force to the latter rule.

Appellants' requested special issue on contributory negligence of plaintiffs presented such negligence as a full defense to plaintiffs' claim for damages for injuries to the entire shipment, even though the jury might have found that some of the cattle for which damages were allowed were in a proper condition for shipment, and that the injuries sustained by them were not due to their alleged poor condition when they started.

[3] We shall not undertake to determine whether or not, under certain supposable circumstances and conditions, the act of shipping such animals over a certain supposable trip might amount to contributory negligence in the shipper which would bar a recovery against the carrier for injuries sustained by them during the trip, and resulting not wholly from their inherent vices, but from the concurring negligence of the shipper and the carrier. At all events, the burden was upon

appellants to sustain the defense of contributory negligence by a preponderance of the evidence, and we have concluded that the trial court did not err in refusing to submit that issue, because, first, while the evidence recited reasonably tends to support the defense urged that the weak condition of the cattle was the sole cause of the injuries which they suffered during the trip, it was insufficient of itself to sustain, prima facie, the defense of contributory negligence on the part of plaintiffs in undertaking to ship them the distance they were shipped and at the time of shipment; second, there was no suggestion in the evidence that injuries resulting from the thin and poor condition of the animals could not be separated and distinguished from those resulting from the negligence of appellants, as it seems the common-law rule applicable to such cases presumes to be practicable, in the absence of some showing to the contrary, and as appellants by their requested issues, copied above, assumed the jury could do.

And the decisions in such cases as Ry. Co. v. Arey, Ry. Co. v. Burns, Ry. Co. v. Rea, and Ry. Co. v. Ft. Worth Horse & Mule Co., cited above, are distinguishable from the present suit, in that in each of them it conclusively appeared that the negligence of the plaintiffs concurred and co-operated with that of the defendant in such a manner as to render it impossible to distinguish the extent of loss resulting from each separately, and to allow a recovery for the negligence of the defendant alone.

[4] The witness Goff, who was plaintiffs' shipper, accompanied the cattle throughout the entire trip, and by reason of that fact the burden was upon the plaintiffs to show that the cattle were negligently handled en route. T. & P. Ry. Co. v. Arnold, 16 Tex. Civ. App. 74, 40 S. W. 829; T. & P. Ry. Co. v. Scoggin, 40 Tex. Civ. App. 526, 90 S. W. 521.

[5] The nearest approach to proof of rough handling by the H. & T. C. Ry. Co. was the testimony of Goff, to the effect that at the station Giddings the train was cut in two parts of three and four cars each; that it was nighttime and dark; that he remained with one part of the shipment, consisting of four cars, while the other part, consisting of three cars, were switched around in the yards of the railway company; that during such switching the cattle were out of his sight; that he did not know where or how they were switched; that there were other freight cars mixed in with the three cars that were switched, and that under such circumstances railway companies generally switch the cars around over the yards. But he further testified in the same connection that when a train is in motion the cattle will stand up and ride, but as soon as they are stopped they get restless and fight and hook each other, while others will lie down and be trampled by those standing up; that railway companies usually refrain from switching the cattle any more than is necessary because in so doing poor cattle are usually knocked down, more or less.

We think such testimony was insufficient to warrant the submission of the issue whether or not the H. & T. C. Ry. Co. was guilty of negligence in the manner in which it handled the train containing the cattle on the trip from Flatonia to Ft. Worth, and on which issue the jury found in plaintiffs' favor for the sum of $224.77. Ft. Worth Belt Ry. v. Jones, 106 Tex. 345, 166 S. W. 1130; Henry v. Phillips, 105 Tex. 459, 151 S. W. 533; Brown v. U. P. Ry. Co., 81 Kan. 701, 106 Pac. 1001, 29 L. R. A. (N. S.) 808. Hence, the assignment to the submission of that special issue to the jury is sustained.

[6] Another assignment is presented to the refusal of the court to submit the special issue requested by the defendants, reading as follows:

"Was the damage, if any, complained of in the plaintiffs' petition, caused as the sole, direct, and proximate result of the cattle in question being too weak, or poor, if any, to stand the ordinary transportation from Marfa to Ft. Worth?"

One of the exceptions presented to the trial judge to the charge that was given reads as follows:

"Defendants except and object to the court's main charge for the reason that the court should affirmatively submit to the jury the question as to whether or not the weak and poor condition of the cattle in question was the sole, direct, and proximate cause of their deaths and damages alleged to have been sustained by them, and we say in this connection that the evidence and the pleadings raised the issue that the damages sued for and complained of were caused as a sole, direct, and proximate result of the cattle being too weak and poor to stand transportation; hence the court should submit this issue affirmatively to the jury."

[7] Appellees insist that the language of the requested issue in using the term "ordinary transportation" rendered the requested issue objectionable. They insist that the character of transportation should have been such as was made with ordinary care and with reasonable dispatch.

Perhaps the criticism is not without merit, but the exception to the main charge, quoted above, was sufficient to point out to the trial judge specifically the desire of defendants' counsel for the submission of the issue whether or not the damages complained of resulted solely and proximately from the weak and poor condition of the cattle, and that such was the meaning intended to be given the requested issue which was refused. Article 1612, Vernon's Sayles' Tex. Civ.

Stats; Olds Motor Works v. Churchill, 175 S. W. 785. We think appellants were entitled to the submission of that issue in some proper form, and that the court erred in refusing to submit it, even though it may be said that the same was submitted inferentially and in a negative form in other issues. T. & P. Ry. Co. v. Dawson, 34 Tex. Civ. App'. 240, 78 S. W. 235; Dallas Hotel Co. v. Fox, 196 S. W. 647; Ft. W. & D. C. Ry. Co. v. Berry, 170 S. W. 125.

For the reasons indicated, the judgment of the trial court is reversed and the cause remanded.