TEXAS MIDLAND RAILROAD v. J. H. MONROE.

. No. 2575. Decided November 19, 1919.

(216 S. W., 388.)

**1.—Carriers of Passengers—Negligence—Agency—Scope of Employment.**

For the act of an agent outside the scope of his delegated authority the principal is not answerable. But the passenger necessarily commits

110 Tex.—7.

his safety to the conductor and employees operating a train and, by virtue of its contracts the carrier assumes a duty of high care to protect him against either intentional or negligent injuries by its employees as well as by others and is answerable for failure. (Pp. 101, 102.)

2.—Same.

Though the specific act of a conductor by negligence in which unintentional injury was inflicted on the passenger was not authorized by the carrier, and though done in his own personal interest not in carrying out that of the employer, it is still a breach of the carrier's obligation to use high care for the passenger's protection, to which the rule *respondeat superior* applies. (P. 102.)

3.—Same—Conductor—Accidental Discharge of Pistol.

The conductor of a train in exhibiting an automatic pistol which he carried, to a passenger and attempting, at the latter's request, to demonstrate the working of the safety catch thereof, accidentally and negligently caused its discharge, wounding the passenger. Held that his negligence was a breach of the duty owed by the carrier to use care for the protection of its passenger while transporting him. (Pp. 99-103.)

4.—Same—Contributory Negligence.

The circumstances here considered were sufficient to raise the issue of contributory negligence on the part of the passenger injured by the accidental discharge of the conductor's pistol which they were examining; and that question should have been submitted to the jury. (P. 103.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

Monroe sued the Railroad Co. and recovered judgment which was affirmed on defendant's appeal (155 S. W., 973). Thereupon appellant obtained writ of error. The case was referred to the Commission of Appeals, Section B, and by them recommended for reversal; but the opinion was afterwards withdrawn and the case set for submission in the Supreme Court.

o

*Dashiel, Crumbaugh & Coon, Henry C. Coke*, and *S. W. Marshall*, for appellant.—That contributory negligence of plaintiff is a defense: H. & T. C. R. Co. v. Clemmons, 55 Texas, 88; T. & P. R. Co. v. Boyd, 6 Texas, Civ. App., 210; Bahel v. Manning, 70 N. W., 327.

That failure to charge on the issue of contributory negligence is reversible error: Neville v. Mitchell, 66 S. W., 579. Where, in an action by a passenger against a railroad company for damages for personal injuries while being transported, the defendant pleads that at the time of the injury its employee whose alleged negligence caused the injury was not acting in the scope of his duties to the company, but was performing a dangerous act at the request of the plaintiff, which resulted in injury to the plaintiff, and adduced on the trial sufficient evidence in support of such issue to entitle

it to be submitted to the jury, and by special charge directs the court's attention to such issue, it is reversible error for the court to fail to charge the jury upon such issue.

*Looney, Clark & Leddy,* for defendant in error.—There was no contributory negligence in the case, and, had that question been properly presented, there would be no error shown. Beach on Contributory Negligence, secs., 24-26; Am. & Eng. Enc. of Law, p. 401, and authorities there cited; Railway Co., v. Danshank, 25 S. W., 297; Railway Co., v. Pendleton, 70 S. W., 996; Railway Co., v. Culpepper, 46 S. W., 925; G. H. & S. A., Ry. Co. v. Patillo, 101 S. W. 492; Herring v. G. H. & S. A. Ry. Co., 108 S. W., 977; Choate v. Railway Co., 90 Texas, 82.

Appellee being injured as the result of violence inflicted upon him by appellant's conductor, who was charged with the duty of carrying out the contract of carriage, rendered appellant liable therefor; and this is true without regard to whether such servant in inflicting such violence was acting within the scope of his employment. 2 Shearman & Redfield on Negligence (5th Ed.) sec., 513; 3 Thomp. on Neg., secs. 2926, 3186, 3187, 3600; H. & T.C. Ry. Co. v. Bush, 133 S. W., 245; H. and T. C., Ry. Co., v. Washington, 30 S. W., 719; Gulf, C. & S. F. Ry. Co. v. Luther, 90 S. W., 44 and authorities there cited.

It has been steadily held to be the duty of a carrier of passengers to protect them, in so far as this can be done, by the exercise of a high degree of care, from the violence and insults of other passengers, and to protect them from the violence and insult of the carrier's own servants, and the inquiry, whether the duty arises from the contract or from the nature of the employment becomes unimportant except that the duty goes with the carrier's contract, however made, whereby the relation of carrier and passenger is established. Dillingham v. Russell, 73 Texas, 52. The doctrine above laid down is supported by all the authorities of this State wihout a single dissent. M., K. & T. Ry. Co. v. Russell, 8 Texas, Civ. App., 578; 28 S. W., 1043; Galveston, etc., Ry. Co. v. Long, 13 Texas, 664; Galveston, etc., Ry. Co. v. LaPrelle, 27 Texas, Civ. App., 496, 65 S. W., 488; St. Louis S. W. Ry. Co., v. Johnson, 26 Texas, Civ. App., 184, 68 S. W., 58; Texas, etc., Ry. Co. v. Story, 37 Texas, Civ. App., 156, 83 S. W., 852; Gulf, etc. Ry. Co. v. Conder, 23 Texas Civ. App., 488, 58 S. W., 58; I. & G. N. Ry. Co. v. Geisen, 69 S. W., 653; St. Louis S. W. Ry. Co., v. Franklin, 44 S. W., 702; H. & T. C. Ry. Co. v. Phillio, 69 S. W., 995, 96 Texas, 18; Texas & Pac. Ry. Co. v. Jones, 39 S. W., 124; H. & T. C. Ry. Co., v. Perkins, 52 S. W., 124.

Mr. Chief Justice PHILLIPS delivered the opinion of the court. The case grows out of what was charged as the negligent shooting

of the plaintiff, J. H. Munroe, by the conductor of the train of the railroad company upon which the plaintiff was a passenger.

Another passenger was E. N. Riley. Both were apparently well acquainted with the conductor. At Riley's request the conductor permitted the two to enter an empty chair-car. not in use in the train, in order that they might privately hold a business conversation. Later, the conductor came through the car. He had in his pocket a small calibre automatic pistol. The plaintiff had seen the pistol in his possession upon a previous occasion. The plaintiff's version of the occurrence was: That the conductor asked him if he had bought "that pistol"—referring to some former conversation between them; Riley asked to see the conductor's pistol and the latter handed it to him; he inspected it and returned it to the conductor; the conductor then took the clip of cartridges out of the handle and said, "Here's the way she works," and the pistol fired, wounding the plaintiff in the leg.

The conductor's testimony put a different phase upon the happening. In the main, he was corroborated by Riley, According to his statement it was the plaintiff who brought up the subject of the pistol and it was at his request that the pistol was produced and an attempted demonstration made by himself as to the operation of the safety clutch upon it. His version was: That the plaintiff opened the immediate conversation by asking him if he had the little automatic pistol he used to have, and he replied that it was in his pocket; the plaintiff asked to see it, whereupon he removed the clip of cartridges and thinking he had wholly unloaded it, handed the clip to Riley and the pistol to the plaintiff; the latter took the pistol, looked at it, and passed it to Riley; Riley looked at it and handed it back to the conductor; the plaintiff then asked "how it worked" or "how the safety worked" (the conductor's testimony giving, at different places, the plaintiff's request in both forms); that he attempted to show the plaintiff the operation of the safety device in response to his request and was engaged in that attempt when the pistol fired. According to Riley, just before the firing of the pistol, which could only have happened with the safety down, the conductor had demonstrated the impossibility of snapping it with the safety up.

The conductor admitted his intention to pull the trigger with the safety down. That, he claimed, was a way of showing how the safety worked. The shooting was clearly unintentional. The conductor did not inspect the barrel after the clip of cartridges was removed. It is evident, however, that with the clip removed he believed the pistol to be empty.

The jury found that the act of the conductor was negligent, returning a verdict for the plaintiff. The trial court refused the request of the railroad company to submit to the jury, the issues as to whether the conductor was acting within the scope of his

employment, and whether the plaintiff was chargeable with contributory negligence. Its right to have had both issues determined by the jury is asserted here by the railroad company.

The display of pistols and demonstration of their mechanism for the instruction of passengers are no part of the ordinary duties of conductors of passenger trains. Experimenting with firearms has nothing to do with the management of a train. The general rule, that for the act of an agent outside the scope of his delegated authority the principal is not answerable, is but a rule of reason and fairness. The responsibility of the principal, founded upon an existence of the agency, ought to cease when the agency is thus repudiated and abandoned, and in the eyes of the law it does cease. In the broad sense, the relationship between a carrier and his conductor is simply that of principal and agent. Otherwise, there could be no just ground for holding the carrier liable for the conductor's acts and omissions. Upon what theory, therefore, is the carrier chargeable in a case like this, where an injury to a passenger was inflicted by the conductor, negligently, according to the jury's decision, but while engaged in an act foreign to his ordinary duties? Different courts have dealt with the general question as related to assaults upon passengers by servants of the carrier—acts equally of an unauthorized nature, as has this court; but it has not before been presented here under a state of facts similar to these. Hence, we have given it some examination.

The responsibility of the carrier for any conduct of his servants entrusted with the carriage of a passenger which results either in his wanton or negligent injury at their hands, regardless of the authority for the particular act, is clear, once the reason for it is correctly apprehended and defined. It can be rendered doubtful in a case like this only by mistaking the ground upon which it rests.

The foundation of the relation of carrier and passenger is a contract. It is in virtue of the contract, supported by an adequate consideration, that the obligation of the carrier to transport the passenger exists. To benefit from the contract the passenger must accept the mode of conveyance provided. He must largely surrender himself into the carrier's hands. He entrusts the carrier with his safety. These considerations as enlarged by the hazards of travel, are the source of the doctrine which imposes upon the carrier that high degree of care in the performance of his obligation deemed necessary by the law for the protection of passengers. The passenger contracts not merely for his carriage. He engages for safe carriage and proper treatment. To afford him both is the purpose of the law in requiring of the carrier more than ordinary care in the execution of the contract.

All men are under the obligation of justice and humanity not to wrongfully injure others. A carrier rests under that obligation

both as to passengers and strangers. With respect to passengers, however, that general duty is increased by the added duty arising from the carrier's special undertaking. It is in the fulfilment of this added duty, created by his contract, that the carrier is required to furnish the passenger that full measure of protection afforded by the exercise of the high degree of care prescribed by the law. This duty of protection extends to violence and insults at the hands of strangers and other passengers. For a stronger reason it applies to the acts of the carrier's own servants charged with the passenger's safety.

The duty of the carrier under his contract does not introduce a new rule for the government of the carrier's liability where there is a breach of the contract by a servant to whom its performance has been delegated. The rule of *respondant superior* is still the rule which determines his liability. It is the rule which must govern the liability of any principal when it is sought to hold him responsible for the wrongs or negligence of an agent. Some courts, in affirming the liability of the carrier for injury to a passenger from acts of a servant entrusted with the performance of the carrier's contract which the carrier had in no way authorized—such as wanton assaults, have treated this question as though the rule of *respondeat superior* were not the one to be applied. It is the only just rule that can be applied. The ground of the carrier's liability in all such cases—the only ground upon which it can be rested—is the violation of a duty primarily that of the carrier by one who, as respects that duty, stands in the carrier's place, clothed with all the carrier's authority, imposed with the carrier's obligation, and hence with the duty commanded of him as essentially a duty of his own. If the violated duty be not a delegated duty, if it be one not enjoined upon the servant as the carrier's representative, and which, therefore, as standing in the carrier's place, he is under no requirement to heed, it is difficult to perceive upon what theory the carrier is answerable for the servant's breach of it.

The carrier is liable for the servant's violation of the duty in all such cases, and in cases of this character as well, because by confiding to the servant's hands the performance of his contract with the passenger, he equally transfers to him the duty of protecting the passenger. To conserve the passenger's safety as far as it may be done by the exercise of the high degree of care exacted by the law, becomes the servant's duty. Its discharge is commanded of him as fully as primarily required of the carrier. It is a continuing duty. He is at no time absolved from it while he stands in the carrier's stead in the carrying out of the carrier's contract. It exists to protect the passenger from injury at his hands, as well as that inflicted by others. It is of no importance that the specific act occasioning the injury was not authorized by the carrier. That is not the test of the carrier's liability. The act may not have been

authorized. But that does not permit an evasion or breach of the duty. The infliction of the wrong by the servant while acting in his own interest is none the less a violation of the carrier's duty to the passenger and his own duty as the carrier's representative. It is of no moment to the injured passenger that the particular wrong was committed by the servant only in his personal interest. Nor is it of moment to the law. The concern of the law in all such cases is simply whether the duty of protection owing the passenger by all servants of the carrier delegated with the execution of the carrier's contract, has been violated. If so, the carrier is liable, and justly so, regardless of the nature of the act constituting the violation.

If the carrier is to be relieved of all responsibility for a breach of this important duty by a servant selected by him for its performance, because in its violation the servant disregards his obligation to the carrier, by delegating the duty to an unfaithful servant the carrier may exempt himself from its observance. Such a result cannot be sanctioned.

The issue of contributory negligence was, in our opinion, raised by the evidence, and the jury should have been permitted to determine it. The issue is presented in any case where from the proof reasonable minds may conclude that both parties were at fault. According to the testimony adduced by the defendant the conductor's action which resulted in the firing of the pistol was at least induced by the plaintiff's request that he show him how the safety device operated. The conductor testified that he was attempting to comply with the request when the pistol fired. The request could reasonably have been interpreted by him as he stated he understood it, that is, as to how the safety worked in respect to firing the pistol. If the conductor and the witness Riley were to be believed, and that was for the jury, the plaintiff asked that a demonstration of the operation of a supposedly unloaded pistol be made in his immediate proximity. It is common knowledge that the handling of firearms believed to be unloaded, is attended with the danger. Where a plaintiff requests the defendant to do that which may put him in peril and which does actually injure him, an issue is presented as to whether he did not invite the danger and should not be regarded as chargeable with some of the blame. In view of another trial we will not further advert to the evidence.

The judgments of the Court of Civil Appeals and District Court are reversed and the cause remanded to the District Court.

*Reversed and remanded.*