

# In The
## Court of Appeals
### Seventh District of Texas at Amarillo

No. 07-12-00216-CV

CONTINENTAL EXPL., LLC, APPELLANT

V.

BANNER WELL SERVICE, LLC, APPELLEE

On Appeal from the 110th District Court
Floyd County, Texas
Trial Court No. 10,138, Honorable William P. Smith, Presiding

January 21, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellee Banner Well Service, LLC, sued appellant Continental Exploration, LLC, for charges for repairs to Continental's Adams No. 1 well in Floyd County. After a bench trial, judgment was for Banner. We will affirm the judgment of the trial court.

Background

Russell Henzler was a pumper hired as an independent contractor by Continental principal Doug Harrington to pump the Adams No. 1, a 7200-foot oil well. The duties of

a pumper, according to Henzler, are "gauging tanks, selling oil, packing wells . . . normal maintenance."[1]

When the Adams No. 1 stopped producing in January 2009, Henzler reported the problem to Harrington. Harrington authorized Henzler to hire a work-over rig to pull the down-hole pump at an estimated cost of some $2,500 to $3,000. Harrington directed Henzler to be present for the work and to obtain a signed work ticket. If other issues arose, Henzler understood he was to contact Harrington for additional authority. Henzler retained Banner for the work.

On Monday, February 2, Henzler reported to Harrington by telephone that the pump was stuck and could not be removed from the well, meaning that the tubing and rods would have to be removed, or "stripped," from the well. Based on his conversations with Henzler and others, Harrington expected the job to take two days and cost about $5,000. Henzler was instructed to remain on site and report any problems to Harrington.

Two days later, on Wednesday February 4, Henzler called Harrington to report that Banner's work-over rig was broken. According to Henzler, after completion of the work he had another brief telephone conversation with Harrington, letting him know the work was complete and the well was pumping. Harrington was not told that Banner's work on the well had continued until February 11, at a total cost to Continental of $17,877.49.

---

[1] Another witness described the duties of pumper as "after the daily maintenance of wells, make sure they're pumping, and nothing is leaking, and if anything needs greasing, he greases it. Gauges the tanks. Sends [a report] probably weekly or monthly[.]"

On receiving the bill from Banner, Harrington contacted Henzler about the additional charges. Henzler had no explanation. Continental paid Banner $5,000, leaving the claimed balance in dispute. Banner filed suit seeking recovery on a sworn account or in quantum meruit.

Trial was to the bench with judgment for Banner in the principal sum of $12,877.49. At Continental's request, the trial court made findings of fact and conclusions of law. It found, among other things, that "several" times between February 2 and February 11, Henzler as agent for Continental ordered goods and services from Banner in connection with the maintenance and repair of the well. It further found the reasonable value of the goods and services was $17,877.49. The court also found that at all material times, Henzler as agent for Continental acted within the scope of authority implied by "industry custom."

Analysis

Through its first issue, Continental asserts the evidence is legally and factually insufficient to sustain a finding of Henzler's actual or apparent authority to bind Continental for the payment of the excess repair charges over the $5,000 Continental paid.

In deciding a no-evidence challenge we determine whether there is evidence that would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). Accordingly we must: (1) credit all favorable evidence that reasonable jurors could believe; (2) disregard all contrary evidence except that which they could not ignore; (3) view the evidence in the light most

favorable to the verdict; and (4) indulge every reasonable inference that would support the verdict. *Id.*

In reviewing the factual sufficiency of the evidence, we first examine all of the evidence, *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986) (per curiam), and, having considered and weighed all of the evidence, set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). Because the trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony, *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), we may not substitute our opinion for the trier of fact merely because we might have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988).

We note at the outset it is undisputed Harrington authorized Henzler to contract for repair of the well, and to choose the service company to make the repairs. It is also undisputed Henzler reported to Harrington that he had spoken with Banner, that Banner charged $270 an hour for its rig, and that Harrington authorized the work. And it is undisputed that after learning it would be necessary to strip the rods and tubing from the well, Harrington and Henzler estimated the job would cost $5,000.[2] It is further undisputed Henzler told Banner to proceed with the repairs. We see no evidence

---

[2] Although unclear on the point, Henzler's testimony also indicates Banner quoted an estimated cost of that amount.

Henzler conveyed to Banner any instruction from Harrington that that cost of the work was not to exceed $5,000.[3]

We conclude the record thus fairly is read to show that Henzler, authorized by Continental, contracted with Banner for the repairs but without an express agreement on the price. In such an instance, the law will imply a reasonable price. *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966). As noted, the trial court found the amount Banner billed Continental was a reasonable value for the services. The finding is supported by the testimony of Banner's representative, who testified the amount billed was reasonable for the work. We think the trial court's judgment can be supported by that view of the record.

The parties, however, present the issue as one of Henzler's authority to bind Continental for payment of the charges billed by Banner.

As a general rule, an agent is one consenting to the control of a principal who manifests consent that the agent so act. *Royal Mortgage Corp. v. Montague,* 41 S.W.3d 721, 732 (Tex. App.—Fort Worth 2001, no pet.). The authority of an agent to act for its principal depends on the words or conduct of the principal toward either the agent, creating actual authority, or toward a third party, creating apparent authority. *Spring Garden 79U, Inc. v. Stewart Title Co.,* 874 S.W.2d 945, 950 (Tex. App.— Houston [1st Dist.] 1994, no pet.).

---

[3] We will not quote from Harrington's testimony in this memorandum opinion, but we find it far from clear from his testimony that he told Henzler not to spend more than $5,000 on the work without further authorization.

Actual authority is created through written or spoken words or conduct of the principal communicated to the agent. *Walker Ins. Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 549-50 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Actual authority is the authority a principal intentionally confers on an agent, or intentionally allows the agent to believe exists, or through the absence of ordinary care permits the agent to believe exists. *Disney Enters., Inc. v. Esprit Fin., Inc.,* 981 S.W.2d 25, 30 (Tex. App.—San Antonio 1998, pet. dismissed w.o.j.). Actual authority may be express or implied. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 356-57 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Walker Ins. Servs.,* 108 S.W.3d at 550 (noting existence of agency relationship based on actual authority may be implied from conduct of parties or from facts and circumstances surrounding the transaction in question). Implied authority, an adjunct of the agent's express actual authority, implies the agent possesses authority to do whatever is reasonably necessary and proper to carrying out the agent's express powers. *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.,* 336 S.W.3d 764, 783 (Tex. App.—Houston [1 Dist.] 2011, no pet.); *Nears v. Holiday Hospitality Franchising, Inc.,* 295 S.W.3d 787, 795 (Tex. App.—Texarkana 2009, no pet.); *Polland & Cook v. Lehmann,* 832 S.W.2d 729, 737-38 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (authority of agent authorized by investors to retain legal counsel for investors included implied actual authority to consent to division of fees).

Here, Continental conferred on Henzler the express authority to retain Banner to replace the pump, a job Continental expected to take two days and cost $5,000. Continental having conferred that express authority, we find Henzler's actual authority

6

impliedly included the authority to allow Banner to continue work to complete the repairs beyond the two days Henzler and Harrington estimated the job should take. That view is further supported by Henzler's February 4 report that made clear the job was not yet completed.

Moreover, even if Henzler failed to follow an instruction to limit the cost to $5,000 without further authorization, his failure to follow instructions[4] does not relieve Continental of the obligation to pay the repair charges. A principal may be liable for the misconduct of its agent falling within the actual or apparent scope of the agent's authority. *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 98-99 (Tex. 1994). "Since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Id.* at 99 (quoting *Standard Distributors v. FTC,* 211 F.2d 7, 15 (2d Cir. 1954)).

Continental argues it is not chargeable for the additional repair costs because Henzler acted outside the scope of his authority by authorizing services costing in excess of $5,000. For the general rule that a principal is not charged with liability to a third person for an act of its agent outside the agent's scope of authority, Continental cites *Texas Midland R.R. v. Monroe,* 110 Tex. 97, 216 S.W. 388, 388 (1919); *Remenchik v. Whittington,* 757 S.W.2d 836, 841 (Tex. App.—Houston [14th Dist.] 1988, no writ); and *Angroson, Inc. v. Independent Commc'ns, Inc.,* 711 S.W.2d 268, 271 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). We find these cases inapposite. Henzler was not

---

[4] Henzler did not follow all the instructions Harrington testified he gave Henzler. It seems clear he was not present at the well site during all the repairs, and he did not sign the daily tickets.

7

acting outside his authority by retaining Banner for the repairs; he was expressly authorized to do so.

We find the evidence both legally and factually sufficient to support the actual authority of Henzler to authorize the repairs that incurred the charges here in dispute. We overrule Continental's first issue.

As we follow it, by its second issue Continental argues the evidence was legally and factually insufficient to support an implicit finding of the trial court that Banner was entitled to recover in quantum meruit. According to its petition, Banner alternatively sought recovery in quantum meruit "should the court find for some reason that [Banner's] suit on account is not proper . . . ." Ordinarily, in the face of a valid express contract covering the services or materials on which recovery is sought, recovery in quantum meruit is not permitted. *Truly v. Austin,* 744 S.W.2d 934, 937 (Tex. 1988) (citing *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674, 675 (Tex. 1964)). Since we have overruled Continental's challenge of the trial court's findings of Henzler's authority to bind Continental for payment of the additional repair charges of $12,877.49, our consideration of Continental's second issue is unnecessary to the disposition of the appeal. TEX. R. APP. P. 47.1.

## Conclusion

Having overruled Continental's sole issue necessary for the disposition of the appeal, we affirm the judgment of the trial court.

James T. Campbell
Justice

8